# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2015 Honda Accord with North Carolina tag number<br>JFK-4514 and 2018 Dodge Charger with North Carolina<br>tag number PSMURF | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:23MJ496 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud |

The application is based on these facts:

See Attached Affidavit of Special Agent Christopher Capps

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

On this day, the applicant appeared before me by reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

/s/ Christopher B. Capps
*Applicant's signature*

Christopher B. Capps, Special Agent, DOJ OIG
*Printed name and title*

Date: 11/20/23

*Judge's signature*

City and state: Greensboro, North Carolina

United States Magistrate Judge L. Patrick Auld
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF:

The Premises at 1604 Cody Avenue,
Greensboro, North Carolina 27405;

The Person of PIERRE FRANCE
DOMINIQUE;

The Person of LATOYA KEISHA
BULLOCK;

The 2015 Honda Accord registered to
DOMINIQUE located on the property at
1604 Cody Avenue, Greensboro, North
Carolina;

The 2018 Dodge Charger registered to
BULLOCK located on the property at
1604 Cody Avenue, Greensboro, North
Carolina.

Case No. 1:23MJ___

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Christopher B. Capps, a Special Agent with the Department of Justice Office of

Inspector General ("DOJ OIG"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for search warrants under Federal

   Rule of Criminal Procedure 41 to search:

a. The residence located at 1604 Cody Avenue, Greensboro, North Carolina 27405, as described in Attachment A-1, for evidence described in Attachment B; and

b. The person of Pierre France Dominique ("**DOMINIQUE**"), as described in Attachment A-2, and items within his immediate vicinity and control for evidence described in Attachment B; and

c. The person of LaToya Keisha Bullock ("**BULLOCK**"), as described in Attachment A-3, and items within her immediate vicinity and control for evidence described in Attachment B; and

d. The 2015 Honda Accord registered to **DOMINIQUE** and the 2018 Dodge Charger registered to **BULLOCK**, both located on the property at 1604 Cody Avenue, Greensboro, North Carolina, as described in Attachment A-4, for evidence described in Attachment B.

2. As set forth below, based on my training and experience, and the facts in this affidavit, there is probable cause to believe that **DOMINIQUE** and **BULLOCK** conspired to commit wire fraud, in violation of 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), from in or around November 2019 through in or around October 2022, and that evidence of the 18 U.S.C. § 1349 will be found at 1604 Cody Avenue, Greensboro, North Carolina, any storage or building located on the curtilage of 1604 Cody Avenue, on **DOMINIQUE**'s or **BULLOCK**'s person, and within the 2015 Honda Accord registered to **DOMINIQUE** and the 2018 Dodge Charger registered to **BULLOCK** located on the property of 1604 Cody Avenue.

3. The facts contained in this affidavit are based on my personal knowledge of this investigation and information provided to me during the course of this investigation. I submit that this affidavit contains the information necessary to establish probable cause to support the application for the requested search warrant. This affidavit is not intended to include each, and every fact and matter observed by or made known to agents of the government. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## AGENT BACKGROUND

4. As a Special Agent with the DOJ OIG, I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests.

5. I have been a Special Agent with DOJ OIG since December 2021. Prior to that, I worked as a Special Agent for the U.S. Department of Agriculture Office of Inspector General for over two years and as a Special Agent for the Naval Criminal Investigative Service for almost twelve years. I have worked various types of criminal, fraud and national security cases. I have received instruction and training, along with investigative experience, in various criminal investigation courses throughout my career.

6. In addition to the facts above, from knowledge, training, and participation in a number of criminal investigations involving fraudulent activities, I know that:

a. Those involved in schemes such as the ones described in this affidavit often maintain records, documents, letters, notes, and other papers relating to wire fraud, and that those records are maintained where they are readily accessible, including in places controlled by the criminals (such as their residences and automobiles). In addition, I know that some of the information related to fraud is often stored in computer equipment, smart phones, and other electronic storage media.

b. It is common for persons involved in fraudulent activities to hide records of fraudulent transactions and fabricated documents in secure locations within their residences, automobiles, and business and storage facilities for their ready access and to conceal them from law enforcement.

c. Persons involved in financial fraud often conceal in their residences, automobiles, offices, and storage facilities, evidence of fraudulent activities relating to the creating, storing, and printing of fabricated documents involved in the criminal activity.

d. Those involved in fraudulent activities commonly maintain addresses, telephone numbers, and communications in books, on papers, and electronic storage media which reflect names, addresses, telephone numbers of, and communications with, their associates in the organizations.

e. Those involved in fraudulent activities maintain the foregoing records and evidence for long periods of time, and sometimes indefinitely on electronic storage media devices and internet cloud space.

f.  Those who execute fraudulent schemes (such as the scheme described in this affidavit) use electronic devices to create and store documents pertaining to their fraudulent activity.

g.  Those who executive fraudulent schemes often use cell phones and other electronic devices to communicate with co-conspirators and victims about their fraudulent activity.

## PROBABLE CAUSE

7.  During this investigation, DOJ OIG learned that **DOMINIQUE** submitted claims to the September 11th Victims Compensation Fund ("VCF") reporting he suffered from medical illnesses associated with being in the vicinity of the World Trade Center (Manhattan district) in New York City on September 11, 2001 (hereby known as "9/11").

8.  In order to apply for compensation from the VCF, **DOMINIQUE**, like all applicants, had to certify as to the following:

I certify that the information provided in this application and any documents provided in support of this claim are true and accurate to the best of my knowledge, and I declare under penalty of perjury that the forgoing is true and correct. I understand that false statements made in connection with the application may result in fines, imprisonment and/or any other remedy available by law to the Federal Government, including as provided in 18 U.S.C. § 1001, and that claims that appear to be potentially fraudulent or to contain false information will be forwarded to federal, state, and local law enforcement authorities for possible investigation and prosecution.

9.  The VCF reviewed and denied **DOMINIQUE**'s claim. The VCF provided documents submitted electronically by **DOMINIQUE** and **BULLOCK** to the VCF and to the World Trade Center Health Program (WTCHP). DOJ OIG

reviewed said documents and determined them to be fabricated.[1] At least one such document was sent to the VCF on **DOMINIQUE**'s behalf via facsimile across state lines from Guilford County in North Carolina.

10. DOJ OIG discovered that WTCHP documents submitted by **DOMINIQUE**, and notarized by **BULLOCK**, showed **DOMINIQUE** reported he was on his way to school at the Leadership and Public Service High School in Manhattan on 9/11. Documents later submitted to the VCF by **DOMINIQUE** showed **DOMINIQUE** reported he was on his way to school at the High School of Economics and Finance in Manhattan on 9/11. DOJ OIG contacted both high schools and neither had any record of **DOMINIQUE** ever attending. Additionally, during oral testimony given to DOJ OIG, **DOMINIQUE** said he was on his way to the High School of Economics and Finance on 9/11.

11. DOJ OIG discovered various inconsistent documents submitted to the WTCHP regarding **DOMINIQUE**'s claim that he volunteered with the American Red Cross (ARC) on days following 9/11. Specifically, a handwritten letter, dated November 18, 2019, from **DOMINIQUE** originally stated he volunteered for the ARC from September 12, 2001 to April 2002. A separate, typed letter, dated January 16, 2020, from **DOMINIQUE** stated he joined the ARC on September

---

[1] The grand jury returned an indictment on October 30, 2023, in case number 1:23CR361, charging **DOMINIQUE** and **BULLOCK** with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, related to the conduct set forth in this probable cause section. Neither defendant has had a first appearance in this case, nor does your affiant have reason to believe either is aware that this indictment has been returned.

12, 2001 and served until September 1, 2002. DOJ OIG noted in the handwritten letter, **DOMINIQUE** claimed he received documentation from the ARC thanking him for his service; however, the ARC documentation was destroyed during Hurricane Sandy. After reporting its destruction, **DOMINIQUE** submitted a letter to the WTCHP from the ARC thanking him for helping to clean Emergency Response Vehicles and offering translator services. The letter was dated September 11, 2002 and was signed by Jennifer Walsh. Subsequent to that submission, **DOMINIQUE** submitted a different letter to the VCF from the ARC with a different date of October 1, 2002, and different verbiage than the letter submitted to the WTCHP. During oral testimony to DOJ OIG, **DOMINIQUE** provided inconsistencies with how he obtained the letter from the ARC. **DOMINIQUE** originally stated he received the letter in the mail, and then later stated he obtained the letter from Jennifer Walsh in person.

12. DOJ OIG discovered **DOMINIQUE**, in coordination with **BULLOCK**, created and submitted a fraudulent letter and high school transcripts to the VCF claiming **DOMINIQUE** was a student at the High School of Economics and Finance on 9/11. The documentation reflected **DOMINIQUE** attended the school from September 4, 2001 to June 10, 2002, and maintained a 3.3 GPA. DOJ OIG interviewed Steven Squillante, Assistant Principal for the High School of Economics and Finance, who advised the transcripts did not originate from the high school. Squillante detailed several inconsistencies with the letter and transcripts to include: he did not know a Kim Cole, whose name appeared on the

documentation; several of the classes listed did not follow the school's curriculum; the phone number on the documentation was not affiliated with the school; and school personnel would not use a personal Gmail address on a high school transcript.



**High School Academic Transcript**

| STUDENT INFORMATION | | SCHOOL INFORMATION |
|---|---|---|
| Name: Pierre Dominique | | School Name: High School of Economics and Finance |
| Address: 15 Westminster Road | | Address: 100 Trinity Place |
| Brooklyn, NY 11218 | | New York, NY 10006 |
| Date of Birth: 10/18/1987 | Sex: Male | Phone Number: (516) 618-9916 |
| Date of Graduation: 06/20/2004 | | Email Address: Kim.Cole750@gmail.com |
| Credits Earned: 9 | GPA: 3.3 | I do hereby affirm that this official academic record is accurate and complete. |
| | | Administrator's Signature: |

| NINTH GRADE | 1ST SEM | 2ND SEM | FINAL GRADE | CREDIT |
|---|---|---|---|---|
| US History | B | B | B | 2 |
| Algebra II | C | C | C | 2 |
| English | B | A | A | 2 |
| Physical Education | A | A | A | 1 |
| Life Science | C | B | B | 2 |

YEAR: 2001

| TENTH GRADE | 1ST SEM | 2ND SEM | FINAL GRADE | CREDIT |
|---|---|---|---|---|

YEAR:

9TH GRADE CREDITS: 9   9TH GRADE GPA: 3.3   10TH GRADE CREDITS:   10TH GRADE GPA:

ELEVENTH GRADE: YEAR:   TWELFTH GRADE: YEAR:

11TH GRADE CREDITS:   11TH GRADE GPA:   12TH GRADE CREDITS:   12TH GRADE GPA:

Special Awards/ Activities:

13. DOJ OIG learned that **BULLOCK** possibly posed as a woman named "LaToya Smith" when she called into the VCF to further **DOMINIQUE**'s fraudulent claim. Specifically, on August 19, 2022, **DOMINIQUE** called the VCF from phone number 914-704-5740 to check the status of his claim. According to the VCF, the caller ID displayed "B Toya." The VCF informed **DOMINIQUE** they were unable to contact LaToya Smith, one of the witnesses **DOMINIQUE** provided to support his claim of attending the High School of Economics and Finance. **DOMINIQUE** informed the VCF he would have LaToya Smith contact them. Within 30 minutes of **DOMINIQUE**'s call, the VCF received a call from a female

claiming to be LaToya Smith. The phone number used was 914-704-5740 and the caller ID again displayed "B Toya." DOJ OIG conducted database checks and found two separate police reports reflecting that phone number 914-704-5740 belonged to **BULLOCK**. Additionally, records provided by the North Carolina Department of Revenue showed **BULLOCK** listed the phone number 914-704-5740 as her personal phone number. Additional communication with the High School of Economics and Finance reflected the administration had no knowledge of a LaToya Smith.

14. DOJ OIG reviewed an affidavit from Brianna Johnson in support of **DOMINIQUE**'s claim. The undated affidavit, submitted to the VCF by **DOMINIQUE**, was notarized by **BULLOCK**. During oral testimony to DOJ OIG, **DOMINIQUE** was inconsistent on the nature of the affidavit. **DOMINIQUE** first stated he had not seen Brianna Johnson in years. **DOMINIQUE** then stated Brianna Johnson mailed him the affidavit and **BULLOCK** notarized it. **DOMINIQUE** then changed his testimony again, stating he and **BULLOCK** had traveled to New York and while in New York they met with Brianna Johnson in person where **BULLOCK** subsequently notarized the letter in person.

15. In May 2023, DOJ OIG obtained information from **BULLOCK**'s employer, the North Carolina Department of Revenue, regarding email and documents created and distributed on **BULLOCK**'s assigned government computer. North Carolina Department of Revenue provided an email, dated April 15, 2022, that

haitianprince718@gmail.com (the email address **DOMINIQUE** identified in his claim application with the WTCHP) emailed to latoya.bullock@ncdor.gov (the email address assigned to **BULLOCK** by her employer) at 12:53 pm. The email contained an attachment that was a .gif file of the "High School of Economics and Finance" logo. Twenty-one minutes later, **BULLOCK**'s email address sent **DOMINIQUE**'s email address a Microsoft World file entitled "Letter head.docx" that was an unsigned version of the letter sent to the VCF on May 22, 2022 purporting to be from Kim Cole. The file's properties indicated that **BULLOCK** created the document at 12:54 pm.

16. Communication between DOJ OIG and the North Carolina Department of Revenue relayed that **BULLOCK** utilizes her assigned government work computer to work from her residence, as well as her office at the Department of Revenue. Employee information provided by the North Carolina Department of Revenue showed **BULLOCK** listed 1604 Cody Avenue, Greensboro, North Carolina as her permanent address.

17. DOJ OIG conducted database checks for **DOMINIQUE** and **BULLOCK**. Records reflected both **DOMINIQUE** and **BULLOCK** reside at 1604 Cody Avenue, Greensboro, North Carolina.

18. During oral testimony to DOJ OIG, **DOMINIQUE** confirmed his residence was 1604 Cody Avenue, Greensboro, North Carolina.

19. In May and November of 2023, DOJ OIG conducted surveillance of 1604 Cody Avenue, Greensboro, North Carolina. During the surveillance, **DOMINIQUE**

was observed leaving the residence with a female. The female matched a description and photograph of **BULLOCK**. The couple were observed leaving the residence in a vehicle parked in the driveway. The vehicle was a 4-door Dodge Charger, blue in color, with North Carolina license plate "PSMURF." A law enforcement query of the license plate reflected the vehicle is registered to **BULLOCK**.

### SEIZURE OF ELECTRONIC MEDIA

20. Based on knowledge, training, and experience, your affiant is aware that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation because the objects themselves may be instrumentalities, fruits, or evidence of the crime, and/or because the objects may have been used to collect store information about crimes in the form of electronic data.

21. As described above and in Attachment B, this application seeks permission to search for records that might be found inside the residence located at 1604 Cody Avenue, Greensboro, North Carolina, on **DOMINIQUE**'s or **BULLOCK**'s person, or in the 2015 Honda Accord registered to **DOMINIQUE**, and the 2018 Dodge Charger registered to **BULLOCK** located at that property. This application seeks permission to search for these records in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other electronic storage media. Thus, the warrant applied

for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

22. *Probable cause.* Your affiant submits that if a computer or storage medium is found in the residence located at 1604 Cody Avenue, Greensboro, North Carolina; or on **DOMINIQUE**'s or **BULLOCK**'s person; or in the 2015 Honda Accord registered to **DOMINIQUE** and the 2018 Dodge Charger registered to **BULLOCK**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on knowledge, training, and experience, your affiant knows that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no costs. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the storage medium that is not currently being used by an active file – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Apart from user-generated files, computer storage media – in particular, computers' internal hard drives – contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, files system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

23. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer in the residence of 1604 Cody Avenue, Greensboro, North Carolina, on **DOMINIQUE**'s or **BULLOCK**'s person, or in the 2015 Honda Accord registered to **DOMINIQUE** and the 2018 Dodge Charger registered to **BULLOCK** located on the property at 1604 Cody Avenue, Greensboro, North Carolina because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls with the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

24. _Necessity of seizing or copying entire computers or storage media._ In most cases, a thorough search of premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site

review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. _The time required for an examination_. As noted above, not all the evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. _Technical requirements_. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.

The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

d. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), when persons executing the warrant conclude that it would be impractical to review the media on-site, the warrant I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence described in the warrant, thus permitting its later examination consistent with the warrant. The examination may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

25. In light of the issues enumerated above, I request the Court's permission to seize the computer hardware and associated peripherals that are believed to contain some or all of the evidence described in the warrant, and conduct an offsite search of the hardware for relevant evidence if, upon arriving at the scene, the agents

executing the search conclude that it would be impractical to search the computer hardware onsite for this evidence.

## **CONCLUSION**

26. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that **DOMINIQUE** and **BULLOCK** conspired to commit wire fraud, in violation of 18 U.S.C. § 1349, and that evidence of this offense will be found at 1604 Cody Avenue, Greensboro, North Carolina 27405, any storage or building located on the curtilage of 1604 Cody Avenue, on **DOMINIQUE** or **BULLOCK's** person, or in the 2015 Honda Accord registered to **DOMINIQUE** and the 2018 Dodge Charger registered to **BULLOCK**.

Respectfully submitted,

/s/ Christopher B. Capps
Special Agent Christopher B. Capps
Department of Justice
Office of the Inspector General

On this day, the applicant appeared before me by reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

11/20/23

The Honorable L. Patrick Auld
United States Magistrate Judge

## ATTACHMENT A-1
### Property to Be Searched

The property to be searched is a one-level single family dwelling located at 1604 Cody Avenue, Greensboro, North Carolina, 27405. The residence has a light-yellow color exterior with dark shutters and a white door. The residence has a small front porch in the front, and a wooden deck in the rear. If you are facing the property from the street, there is a small gravel driveway to the right of the residence. There are no clear numbers on the outside of the residence; however, there is a mailbox at the end of the driveway denoting "1604."







The residence to be searched includes all rooms, containers, safes, storage spaces, and curtilage at 1604 Cody Avenue, Greensboro, North Carolina 27405.

## ATTACHMENT A-2
### Person to be searched

The person to be searched is Pierre France **DOMINIQUE**. **DOMINIQUE** is listed at approximately five feet and six inches tall. His approximate weight is 220 pounds. **DOMINIQUE** is a black male who is thirty-six years old. His date of birth is October 16, 1987.

The search of **DOMINIQUE** includes any and all clothing and personal belongings, backpacks, briefcases, purses, and bags that are within **DOMINIQUE**'s immediate vicinity control, wherever **DOMINIQUE** may be found within the State of North Carolina. **DOMINIQUE** is depicted in the following photograph:



**ATTACHMENT A-3**
**Person to be searched**

The person to be searched is LaToya Keisha **BULLOCK**. LaToya Keisha **BULLOCK** is listed at approximately five feet and seven inches tall. Her approximate weight is unknown. **BULLOCK** is a black female who is thirty-four years old. Her date of birth is March 27, 1989.

The search of **BULLOCK** includes any and all clothing and personal belongings, backpacks, briefcases, purses, and bags that are within **BULLOCK**'s immediate vicinity control, wherever **Bullock** may be found within the State of North Carolina. **BULLOCK** is depicted in the following photograph:



**DOMINIQUE** and **BULLOCK** are known to operate the following vehicles:

- 2015 Honda Accord, North Carolina license plate JFK-4514 (no photo available).

- 2018 Dodge Charger, North Carolina license plate PSMURF.



# ATTACHMENT B
## Items to be Seized

All information described above in Attachments A-1, A-2, A-3, and A-4 that constitute evidence and instrumentalities of violations of Title 18, United States Code, Section 1349, in the following form:

I.  For mobile devices, to include computers, cellular telephones, and electronic devices capable of communicating via the internet as well as any form of storage medium potentially capable of containing photographs, videos, documents, or materials:

   a.  Records revealing the identity of the person(s) with access to the mobile device seized;

   b.  Records and documents referencing or revealing the preparation, submission, processing, or handling of applications for claims to the VCF and the WTCHP by Pierre France DOMINIQUE, including but not limited to applications, letters, facsimiles, notes, emails, and correspondence to and from the VCF and the WTCHP;

   c.  Any records and documents referencing or revealing the identities of co-conspirators involved in the scheme to defraud the VCF involving Pierre France DOMINIQUE;

   d.  Any documentation reflecting communication between Pierre France DOMINIQUE or LaToya Keisha BULLOCK pertaining to claims submitted to the VCF or the WTCHP, to include written notes, papers, letters, applications; and/or

   e.  Any documentation from the American Red Cross referencing Pierre France DOMINIQUE.

II.  The following items may be searched for the above-referenced evidence:

   a.  Contents of the electronic directory;

b. Communications in the form of texts, messages, photographs, images, electronic mail, and any other form of electronic communication;

c. Stored communications, including voicemail, voice messages, or other memory features;

d. Texts, photographs, videos audio files, and/or images;

e. Phone call logs;

f. Stored communications to include voicemail, or any other memory feature;

g. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

III. Biometric Permissions

a. During the execution of this search warrant, law enforcement is permitted to: (1) depress the thumb and/or fingers onto the fingerprint sensor of the device (only when the device has such a sensor) of Pierre France DOMINIQUE and/or LaToya Keisha BULLOCK, and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of the face of Pierre France DOMINIQUE and/or LaToya Keisha BULLOCK with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.

b. Further, this warrant does not authorize law enforcement personnel to compel that any individual state or otherwise provide the password or any other means that may be used to unlock or access the devices, including by identifying the specific

biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

IV.  Other Items of Evidence

   a.  Records and documents referencing or revealing the preparation, submission, processing, or handling of applications for claims to the VCF and the WTCHP by Pierre France DOMINIQUE, including but not limited to applications, letters, facsimiles, notes, emails, and correspondence to and from the VCF and the WTCHP;

   b.  Any records and documents referencing or revealing the identities of co-conspirators involved in the scheme to defraud the VCF involving Pierre France DOMINIQUE;

   c.  Any documentation reflecting communication between Pierre France DOMINIQUE or LaToya Keisha BULLOCK pertaining to claims submitted to the VCF or the WTCHP, to include written notes, papers, letters, applications; and/or

   d.  Any documentation from the American Red Cross referencing Pierre France DOMINIQUE.

Privilege: If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.